No. 22-20562

# United States Court of Appeals

### Fifth Circuit

---

BRENT HEBERT,

*Plaintiff-Appellant*,

AARON MOHAMMED,

*Appellant*,

—*vs.*—

TECHNIPFMC USA, INCORPORATED and
FMC TECHNOLOGIES, INCORPORATED,

*Defendants-Appellees*.

---

On Appeal from the
United States District Court for the Southern District of Texas
No. 4:20-cv-02059, Hon. Alfred H. Bennett

---

## BRIEF OF APPELLANTS

MELISSA MOORE
   Tex. Bar No. 24013189
      melissa@mooreandassociates.net

CURT HESSE
   Tex. Bar No. 24065414
      curt@mooreandassociates.net

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739
www.mooreandassociates.net

January 19, 2023

CERTIFICATE OF INTERESTED PERSONS

As required by Fed. R. App. P. 26.1, 28(a)(1) and 5th Cir. R. 28.2.1, 28.3(a), the undersigned counsel of record for Plaintiffs-Appellants Brent Hebert and Aaron Mohammed certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of the United States Court of Appeals for the Fifth Circuit may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant(s) | Brent Hebert |
| | Aaron Mohammed |
| | |
| Counsel for Appellant(s) | Melissa Moore |
| | Curt Hesse |
| | MOORE & ASSOCIATES |
| | Lyric Centre |
| | 440 Louisiana Street, Suite 1110 |
| | Houston, Texas 77002 |
| | www.mooreandassociates.net |
| | |
| Appellee(s) | TechnipFMC USA, Inc. |
| | FMC Technologies, Inc. |
| | |
| Counsel for Appellee(s) | Kelsi S. White (appeal only) |
| | Todd W. Mensing |
| | Jordan L. Warshauer (trial only) |
| | Joseph Y. Ahmad (trial only) |
| | Reis M. Flores (trial only) |
| | AHMAD, ZAVITSANOS & MENSING, P.L.L.C. |
| | 1221 McKinney Street, Suite 2500 |
| | Houston, Texas 77010 |
| | www.azalaw.com |

s/ Curt Hesse
_____
Curt Hesse

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants Brent Hebert and Aaron Mohammed request oral argument. This case involves numerous factual and legal issues. The Court's consideration of these issues may be assisted or advanced by the presence of the parties before the Court to comment upon the issues and respond to inquiries by the Court. Fed. R. App. P. 34(a)(1); 5th Cir. R. 28.2.3, 28.3(b), 34.2.

s/ Curt Hesse
_____
Curt Hesse

TABLE OF CONTENTS

Page

Certificate of Interested Persons ............................................................ ii

Statement Regarding Oral Argument ..................................................... iii

Table of Contents ................................................................................. iv

Table of Authorities ............................................................................. vi

Statement of Jurisdiction ....................................................................... 1

Statement of the Issue(s) ........................................................................ 2

Statement of the Case ............................................................................ 3

Summary of the Argument ..................................................................... 7

Argument & Authorities ......................................................................... 8

    1.   Standard of Review ....................................................................... 8

    2.   The Court should reverse because installation engineers, like Hebert, are nonexempt by regulation ................................................. 10

    3.   The Court should reverse because FMC's summary-judgment evidence—even if not controverted and viewing it in the light most favorable to Hebert—would not entitle the company to a directed verdict at trial on its affirmative defense that, during each week that he worked, Hebert was exempt from the maximum hour requirements of the FLSA under the professional exemption ...................... 12

        a.  Overtime exemptions, including the professional exemption, are affirmative defenses on which the employer has the burden of proof ............................................................................... 12

        b.  Overtime exemptions, including the professional exemption, are determined on a workweek basis ........................................... 13

TABLE OF CONTENTS
(continued)

Page

    c.   The Court should reverse because FMC's summary-judgment evidence does not establish, as a matter of law, that Hebert is exempt under the professional exemption ............................................. 14

        i.   FMC's summary-judgment evidence does not establish, as a matter of law, that it paid Hebert on a salary basis .......................... 14

        ii.   FMC's summary-judgment evidence does not establish, as a matter of law, that Hebert's primary duty was work requiring advanced knowledge in a specialized field of science or learning acquired by prolonged study ............................................. 17

        iii.  FMC's summary-judgment evidence does not establish, as a matter of law, that Hebert's primary duty was work requiring the consistent exercise of discretion and judgment ........................... 19

Conclusion ................................................................................................... 21

Signature ..................................................................................................... 21

Certification Regarding Privacy Redactions ........................................... 22

Certification Regarding Electronic Submission ...................................... 23

Certificate of Service .................................................................................. 24

TABLE OF AUTHORITIES

Page

Cases

*Adams v. All Coast, L.L.C.*,
  15 F.4th 365 (5th Cir. 2021) ......................................................... 16

*Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*,
  804 F.2d 879 (5th Cir. 1986) ..........................................................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................8, 9

*Chakir v. Ba Research Int'l*,
  No. H-10-2850,
  2011 U.S. Dist. LEXIS 171389 (S.D. Tex. Jul 15, 2011) .................................. 16

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974) ............................................................... 2, 12

*Dewan v. M-I, L.L.C.*,
  858 F.3d 331 (5th Cir. 2017) ...............................................10, 13, 19

*Fontenot v. Upjohn Co.*,
  780 F.2d 1190 (5th Cir. 1986) ........................................................9

*Hewitt v. Helix Energy Sols. Gp., Inc.*,
  15 F.4th 289 (5th Cir. 2021) ..................................................... 15, 16

*Lipnicki v. Meritage Homes Corp.*,
  No. 3:10-cv-605,
  2014 U.S. Dist. LEXIS 32951 (S.D. Tex. Feb. 13, 2013) .............................. 10

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*,
  203 F.3d 326 (5th Cir. 2000) ...................................................12, 13

*McKee v. CBF Corp.*,
  299 F. App'x 426 (5th Cir. 2008) ....................................................9

# TABLE OF AUTHORITIES
(continued)

Page

*Mello v. Sara Lee Corp.*,
  431 F.3d 334 (5th Cir. 2005) ............................................................ 8

*Owsley v. San Antonio Indep. Sch. Dist.*,
  187 F.3d 521 (5th Cir. 1999) ............................................................ 8

*Richards v. Mitcheff*,
  696 F.3d 635 (7th Cir. 2012) ............................................................ 8

*Sec'y Lab. v. Daylight Dairy Prods*,
  779 F.2d. 784 (1st Cir. 1985) .......................................................... 13

*Triple Tee Golf, Inc. v. Nike, Inc.*,
  485 F.3d 253 (5th Cir. 2007) ............................................................ 8

*Tyler v. Cedar Hill Indep. Sch. Dist.*,
  426 F. App'x 306 (5th Cir. 2011) ..................................................... 10

*Warfield v. Byron*,
  436 F.3d 551 (5th Cir. 2006) ........................................................... 10

*X Techs., Inc. v. Marvin Test Sys.*,
  719 F.3d 406 (5th Cir. 2013) ............................................................. 9

*Zannikos v. Oil Inspections (U.S.A.), Inc.*,
  605 F. App'x 349 (5th Cir. 2015) ..................................................... 12

## Statutes

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1331 ................................................................................... 1

29 U.S.C. § 207(a)(1) ........................................................................ 1, 12

29 U.S.C. § 213(a)(1) .................................................................... passim

TABLE OF AUTHORITIES
(continued)

Page

29 U.S.C. § 216(b) ............................................................... 1

29 U.S.C. §§ 201-219 ............................................ passim

**Other Authorities**

U.S. Dep't Lab., Wage & Hour Div.,
   Op. Letter (Jul. 11, 1985) .................................... 11, 18

U.S. Dep't Lab., Wage & Hour Div.,
   Op. Letter (Jul. 14, 2000) ......................................... 12

U.S. Dep't of Labor, Wage & Hour Div.,
   Op. Letter No. FLSA2018-25 (Nov. 8, 2018) ................ 16

U.S. Dep't of Labor, Wage & Hour Div.,
   Op. Letter No. FLSA2020-13 (Aug. 31, 2020) .............. 16

**Rules**

5th Cir. R. 25.2.1 .................................................... 23

5th Cir. R. 25.2.13 .................................................. 22

5th Cir. R. 25.2.5 ................................................... 24

5th Cir. R. 28.2.1 ..................................................... ii

5th Cir. R. 28.2.3 .................................................... iii

5th Cir. R. 28.3(a) .................................................... ii

5th Cir. R. 28.3(b) ................................................... iii

5th Cir. R. 28.3(f) ..................................................... 2

TABLE OF AUTHORITIES
(continued)

Page

5th Cir. R. 32.1 ................................................................ 25

5th Cir. R. 32.3 ................................................................ 25

5th Cir. R. 34.2 ................................................................ iii

Fed. R. App. P. 25(b) ...................................................... 24

Fed. R. App. P. 25(c) ...................................................... 24

Fed. R. App. P. 26.1 ........................................................ ii

Fed. R. App. P. 28(a)(1) .............................................. ii, 15

Fed. R. App. P. 28(a)(10) ............................................... 25

Fed. R. App. P. 28(a)(5) .................................................. 2

Fed. R. App. P. 32(a)(5) ................................................. 25

Fed. R. App. P. 32(a)(6) ................................................. 25

Fed. R. App. P. 32(a)(7)(B) ........................................... 25

Fed. R. App. P. 32(f) ...................................................... 25

Fed. R. App. P. 32(g)(1) ................................................. 25

Fed. R. App. P. 34(a)(1) ................................................. iii

Fed. R. Civ. P. 50(a) ........................................................ 9

Fed. R. Civ. P. 56 ..................................................... 1, 6, 8

TABLE OF AUTHORITIES
(continued)

Page

**Regulations**

29 C.F.R. § 541.3(a) ................................................................. 11

29 C.F.R. § 541.300(a)(1) ......................................................... 15

29 C.F.R. § 541.300(a)-(b) ....................................................... 14

29 C.F.R. § 541.300(b) ............................................................. 14

29 C.F.R. § 541.301(a) ............................................................. 17

29 C.F.R. § 541.301(a)-(b) ....................................................... 17

29 C.F.R. § 541.301(b) ..................................................17, 18, 19

29 C.F.R. § 541.301(d) ............................................................. 19

29 C.F.R. § 541.601 ................................................................... 3

29 C.F.R. § 541.602 ........................................................... 14, 15

29 C.F.R. § 541.604(b) ............................................................. 15

29 C.F.R. § 541.700 ................................................................. 14

29 C.F.R. § 541.700(a) ............................................................. 14

29 C.F.R. § 776.4(a) ................................................................. 13

29 C.F.R. § 778.104 ................................................................. 13

29 C.F.R. § 782.2(b)(3)-(4) ...................................................... 13

29 C.F.R. § 784.114 ................................................................. 13

TABLE OF AUTHORITIES
(continued)

Page

29 C.F.R. §§ 541.200-541.204 ...............................................................3

29 C.F.R. §§ 541.300-541.304 .......................................................... 2, 3

29 C.F.R. pt. 541 ............................................................................. 11

Defining and Delimiting the Exemptions for Executive, Administrative,
    Professional, Outside Sales and Computer Employees,
    69 Fed. Reg. 22,122 (Apr. 23, 2004) ............................................. 11

## STATEMENT OF JURISDICTION

This is an appeal under 28 U.S.C. § 1291 from the final order or judgment of a district court that disposes of all parties' claims. On June 11, 2020, Plaintiff-Appellant Brent Hebert (referred to as "Hebert") filed a putative collective-action lawsuit against Defendant-Appellee TechnipFMC USA, Inc. (referred to as "Technip FMC")[1] in the United States District Court for the Southern District of Texas, alleging that it violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219, ("FLSA") by failing to pay him and others overtime for hours worked in excess of forty per workweek. (ROA.11-24.) *See*, 29 U.S.C. §§ 207(a)(1), 216(b). The district court had federal-question jurisdiction over Hebert's FLSA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). The district court entered summary judgment under Fed. R. Civ. P. 56 on September 27, 2022, dismissing the lawsuit with prejudice. (ROA. 1307-14.) Hebert timely appealed on October 19, 2022. (ROA.1315-17.) This Court has appellate jurisdiction from the final decision of a district court under 28 U.S.C. § 1291.

---

[1] On November 6, 2020, Hebert amended his complaint to substitute FMC Technologies, Inc. (referred to as "FMC") for TechnipFMC. (ROA.120-32; *see also*, ROA.63 ("As noted in this Answer, Defendant TechnipFMC … is not the proper defendant in this action because it did not employ Plaintiff Brent Hebert. Hebert was employed by FMC Technologies, Inc.").)

## Statement of the Issue(s)

In accordance with Fed. R. App. P. 28(a)(5) and 5th Cir. R. 28.3(f), the following issue is being submitted for review:

> whether the summary-judgment evidence, even if not controverted and viewing it in the light most favorable to Hebert, would entitle FMC to a directed verdict at trial on its affirmative defense[2] that, during each week that he worked, he was exempt from the maximum hour requirements of the FLSA under 29 U.S.C. § 213(a)(1) and 29 C.F.R. §§ 541.300-541.304 as a professional employee (the "professional exemption").

---

[2] Exemptions from the overtime requirements of the FLSA are affirmative defenses, and the burden to establish them rests squarely on the employer. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). See *infra* pages 12-13.

STATEMENT OF THE CASE

This is an FLSA case involving an offshore oilfield worker (in this case, Hebert, an installation engineer) who was employed by FMC and who was paid on a salary-plus-daily-bonus basis.[3] (*See generally*, ROA.120-32.) The central dispute in this appeal is not whether he worked overtime (he did) or whether he was paid for it (he was not); it is, instead, whether he is entitled to overtime at all. In its answer, FMC responded to that question in the negative, claiming that Hebert—and all installation engineers—were exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213(a)(1) and 29 C.F.R. §§ 541.200-541.204, 541.300-541.304, 541.601 as administrative employees, professional employees and/or highly compensated employees. (*See*, ROA.142.)

FMC claims to be "a leading technology provider to the traditional and new energies industry[,] delivering fully integrated projects, products, and services." *See*, TechnipFMC—About Us, https://www.technipfmc.com/en/about-us/ (last visited Nov. 11, 2021). As part of its suite of services, FMC employs installation engineers who are responsible for, among other things, "[p]roviding operational input to product design and development, technical planning for field support work to ensure job readiness, creation of technical documentation and procedures, execution of onshore

---

[3] FMC employed Hebert as an installation engineer from August 7, 2015, to February 3, 2020. (ROA.1248, 1251-52, 1256-57.)

and offshore field support, completion of project closeout reviews and documentation, direct customer interface, [and] product and system troubleshooting." (ROA.1242; *see also*, ROA.1345.) In layman's terms, installation engineers are responsible for installing (as the job title suggests) and servicing oilfield equipment (for example, a "subsea tree"—an assembly of valves of different sizes and a choke) that is actually designed by someone else (for example, a product engineer). (ROA.1002; *see also*, ROA.1003). The equipment that the installation engineers are responsible for installing and servicing "help[s] control oil and gas wells[.]" (ROA.1002.)

Installation engineers frequently and primarily perform manual labor or other nonexempt work. (ROA.1053 ("We go offshore, we work a ton of hours, we are hands on, and we do it for a hundred days a year. So yes, our primary duty turns into a— very much a technician role."); *see also*, ROA.1053-55 (whether working onshore or offshore, installation engineers do not perform work traditionally required of degreed engineers); ROA.1055-56 (product engineers—not installation engineers—perform work traditionally required of degreed engineers); ROA.1138-39 (installation engineers perform manual labor like pressure testing, equipment inspection and assembly, etc.); ROA.1141-42; ROA.939-40, 943 (FMC corporate representative admitting that installation engineers perform manual work). They are not required to have college degrees, and many, in fact, do not. (ROA.1010-13.)

FMC pays installation engineers, including Hebert, a salary plus a daily bonus (called a "field service premium") when they worked in the field. (ROA.1247-58; *see also*, ROA.962 (FMC corporate representative explaining that installation engineers entitled to field service premium for "work[ing] in the field[]"); ROA.960 (field service premium is a "daily bonus"); ROA.966; ROA.969 ("The field service premium[] … is a daily bonus that is *purely based off the time that is spent working in the field*[.]" (emphasis added)).) An installation engineer's field service premium is the lesser of $425 or thirteen percent (13%) of the installation engineer's annual salary divided by twenty-eight. (ROA.962-63.) Often times, the total take-home pay for an installation engineer, including Hebert, is two times—or more—his or her base salary. (ROA.970-74; *see also*, ROA.1274-74 (field service premium denoted as "fsp" on paystubs).) In other words, the field service premium for installation engineers, including Hebert, is often well in excess of his or her base salary. (*Id*.)

FMC does not guarantee installation engineers, like Hebert, that they will always be paid at least $455 (or $684 or any other amount) per week regardless of the quantity or quality of their work; they are, instead, at-will employees, and FMC expressly reserves the right to reduce their pay for any reason and with or without notice to them. (ROA.960-62; ROA.1248 ("Nothing in this [offer] letter shall … be construed so as to create a contract, promise *or guarantee* … ." (emphasis added)).)

When installation engineers, including Hebert, work in the field, they typically work six or seven days per week and twelve hours per day. (ROA.975-76; ROA.913; *see also*, ROA.1257.) Even though they work more than forty hours per week, FMC does not pay installation engineers, including Hebert, overtime because it claims that they are exempt. (ROA.913; ROA.925-26; *see also*, ROA.1260; ROA.1264-74.)

Hebert moved for summary judgment under Fed. R. Civ. P. 56, claiming that the evidence established, as a matter of law, that FMC did not pay its installation engineers on a salary basis, an essential element of the company's affirmative defenses[4] that they are exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213(a)(1), including the professional exemption. (*See generally*, ROA.530-664.) FMC filed a cross-motion for summary judgment claiming that during each week that he worked, Hebert was exempt from the maximum hour requirements of the FLSA under the professional exemption. (*See generally*, ROA.671-705.) The district court ultimately denied Hebert's motion, Granted FMC's motion and dismissed the case with prejudice. (ROA.1307-14.) Just over three weeks later, Hebert appealed. (ROA.1315-17.)

---

[4] See *supra* note 2 and *infra* pages 12-13, 14-16.

## SUMMARY OF THE ARGUMENT

This is not a summary-judgment case. Department of Labor regulations—and this Court's precedent—when applied to the facts of this case categorically exclude Hebert (and all installation engineers) from all of the 29 U.S.C. § 213(a)(1) exemptions, including the professional exemption. But even if they did not, FMC did not meet its threshold summary-judgment burden to establish its affirmative defense that Hebert is exempt from the maximum hour requirements of the FLSA as a professional employee beyond peradventure. Indeed, a reasonable jury could—and will likely—conclude that Hebert was not exempt. Accordingly, the Court should reverse.

Argument & Authorities

## 1. Standard of Review

This Court reviews an order granting summary judgment *de novo*, using use the same standards as did the district court in considering facts and analyzing law. *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999). "Summary judgment is appropriate [if the summary-judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mello v. Sara Lee Corp.*, 431 F.3d 334, 335 (5th Cir. 2005) (quoting Fed. R. Civ. P. 56). In making that determination, the Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986); *see also*, *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) ("[J]udges must not make findings of fact at the … summary-judgment stage[]." (emphasis added)). Generally speaking, "[t]he movant bears the [initial] burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). However, if the movant will bear the burden of persuasion at trial (for example, when moving

– 8 –

for summary judgment on any part of an affirmative defense[5]), it must do more; in those cases, the movant "must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *McKee v. CBF Corp.*, 299 F. App'x 426, 428 (5th Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 331); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."); *see also*, Fed. R. Civ. P. 50(a) (standard for judgment as a matter of law, formerly known as a directed verdict).

In other words, the evidence offered in support of, for example, an affirmative defense, must be so overwhelming "that a reasonable jury would not have a legally sufficient evidentiary basis to find for [the nonmovant] on [the affirmative defense]." Fed. R. Civ. P. 50(a); *see also*, *X Techs., Inc. v. Marvin Test Sys.*, 719 F.3d 406, 411 (5th Cir. 2013) ("If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. But if reasonable persons could differ in their interpretations of the evidence, a determination of the issue is for the jury.")

---

[5] Exemptions from the maximum hour requirements of the FLSA are affirmative defenses on which the employer has the burden of proof. See *supra* note 2 and *infra* pages 12-13.

(citations and quotations omitted) (emphasis added); *see also*, *Lipnicki v. Meritage Homes Corp.*, No. 3:10-cv-605, 2014 U.S. Dist. LEXIS 32951, at *36 (S.D. Tex. Feb. 13, 2013) (Costa, J.) (observing that it is generally more difficult to obtain summary judgment on an affirmative defense). If—and only if—the party moving for summary judgment meets its threshold burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial[]" to overcome summary judgment. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *see also*, *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 308 (5th Cir. 2011); *Dewan v. M-I. L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (observing that movant on FLSA exemption defense "must establish beyond peradventure *all* of the essential elements of the … defense to warrant judgment in his favor[]" (emphasis in original) (citations and quotations omitted)).

**2.  The Court should reverse because installation engineers, like Hebert, are nonexempt by regulation.**

As the regulations make clear,

> The section 13(a)(1) exemptions and the [corresponding] regulations … do not apply to manual laborers or other "blue collar" workers who perform work involving repetitive operations with their hands, physical skill and energy. Such nonexempt "blue collar" employees gain the skills and knowledge required for performance of their routine manual and physical work through apprenticeships and on-the-job training, not through the prolonged course of specialized intellectual instruction … . Thus, for example, non-management production-line employees and

> non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, *mechanics*, plumbers, iron workers, craftsmen, *operating engineers*, longshoremen, construction workers and laborers are entitled to minimum wage and overtime premium pay under the Fair Labor Standards Act, and are not exempt … *no matter how highly paid they might be*.

29 C.F.R. § 541.3(a) (emphasis added).

To the letter, that description fits what Hebert did while employed by FMC as an installation engineer. (*See*, ROA.1053 ("We go offshore, we work a ton of hours, we are hands on, and we do it for a hundred days a year. So yes, our primary duty turns into a—very much a technician role."); *see also*, ROA.1138 (installation engineers perform manual labor like pressure testing, equipment inspection and assembly, etc.). Were it still unclear that he is not exempt, the U.S. Department of Labor has expressly observed that workers like Hebert are almost, as a rule, nonexempt. *See*, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,241-22,244 (Apr. 23, 2004) (as codified at 29 C.F.R. pt. 541) (explaining that "operating engineers" and "heavy equipment mechanics" and "industrial machinery repairers" and "oil-well drillers" are not exempt); *see also*, U.S. Dep't Lab., Wage & Hour Div., Op. Letter (Jul. 11, 1985) (explaining that field service engineers who "install and service company products; provide technical support, orientation and training to customers;

modifies installed equipment; and assists engineers in determining and solving design problems" are not exempt under 29 U.S.C. § 213(a)(1)); U.S. Dep't Lab., Wage & Hour Div., Op. Letter (Jul. 14, 2000) (explaining that field service technicians who work both in the office and in the field are not exempt under 29 U.S.C. § 213(a)(1)). Accordingly, the Court should reverse.

3. **The Court should reverse because FMC's summary-judgment evidence—even if not controverted and viewing it in the light most favorable to Hebert—would not entitle the company to a directed verdict at trial on its affirmative defense that, during each week that he worked, Hebert was exempt from the maximum hour requirements of the FLSA under the professional exemption.**

      a. *Overtime exemptions, including the professional exemption, are affirmative defenses on which the employer has the burden of proof.*

Under the FLSA, "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours … at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Certain employees, however, are exempt from the overtime requirements [of the FLSA]." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 352 (5th Cir. 2015). Exemptions are affirmative defenses, and the burden of establishing them rests squarely on the employer. *Corning Glass Works*, 417 U.S. at 196-97. "The decision whether an employee is exempt … is *primarily a question of fact*[.]" *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 350 (5th Cir. 2000) (emphasis added).

"However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Id*. But to prevail on an exemption defense at the summary-judgment stage, the employer must come forward with enough evidence to establish each element of it "beyond peradventure." *Dewan*, 858 F.3d at 340 (citations omitted).

  b. *Overtime exemptions, including the professional exemption, are determined on a workweek basis.*

The FLSA "takes a single workweek as its standard … ." 29 C.F.R. § 778.104; *see also*, 29 C.F.R. § 776.4(a) ("The workweek is to be taken as the standard for determining the applicability of the Act. Thus, if an any workweek an employee is engaged in both covered and noncovered work he is entitled to both the wage and hours benefits of the Act for all of the time worked in that week, unless exempted therefrom by some specific provision of the Act."); 29 C.F.R. § 784.114 ("The general rule that the unit of time to be used in determining the application of the exemption to an employee is the workweek … ."); 29 C.F.R. § 782.2(b)(3)-(4) (motor carrier exemption determined on a workweek basis); *see also*, *Sec'y Lab. v. Daylight Dairy Prods*, 779 F.2d. 784, 787 (1st Cir. 1985) ("The Secretary, however, determines whether the executive exemption applies on a week-by-week basis[.]"). Thus, to prevail on an exemption defense at the summary judgment stage, the employer must meet its

summary-judgment burden as to each individual workweek during which it claims an exemption applies.

      c. *The Court should reverse because FMC's summary-judgment evidence does not establish, as a matter of law, that Hebert is exempt under professional exemption.*

The professional exemption excuses an employer from its obligation to pay overtime to "any employee employed in a bona fide … professional capacity … ." 29 U.S.C. § 213(a)(1). To qualify for the professional exemption, FMC must show beyond peradventure (1) that it paid Hebert on a salary basis[6] and (2) that his primary duty[7] was "the performance of work[] … [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction … [and] requiring the consistent exercise of discretion and judgment[.]" 29 C.F.R. § 541.300(a)-(b).

      i. FMC's summary-judgment evidence does not establish, as a matter of law, that it paid Hebert on a salary basis.

To prevail on summary judgment on the professional exemption, FMC needed to establish, as a matter of law, that it paid Hebert on a salary basis—or *without* regard

---

[6] "The term 'salary basis' is defined at [29 C.F.R.] § 541.602[.]" 29 C.F.R. § 541.300(b). See also *infra* pages 14-16 (discussing payment on a salary basis).

[7] "The term … 'primary duty' is defined at [29 C.F.R.] § 541.700" 29 C.F.R. § 541.300(b). It "means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Factors to consider when determining an employee's primary duty include but are not limited to: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. *Id.*

to the number of hours or days he worked. *See*, 29 C.F.R. §§ 541.300(a)(1), 541.602. But FMC acknowledges, as it must, that Hebert was paid *with* regard to the number of days he worked. (*See*, ROA.1257-58; *see also*, ROA.962 (installation engineers entitled to field service premium for "work[ing] in the field[]"); ROA.960 (field service premium is a "daily bonus"); ROA.966; ROA.969 ("The field service premium[] … is a daily bonus that is *purely based off the time that is spent working in the field*[.]" (emphasis added)). Still, in spite of those admissions, it claimed that it met its summary-judgment burden with respect to the salary-basis element of the professional exemption because (1) part of the remuneration Hebert received was paid on a salary basis (*see*, ROA.684-87) and (2) the regulation that expressly applies to situations where an employee is paid in part on a salary basis and in part on a daily basis, 29 C.F.R. § 541.604(b), really doesn't (ROA.685).

To be clear, the *only* way to affirm the district court is to ignore this Court's en banc decision in *Hewitt v. Helix Energy Sols. Gp., Inc.*, 15 F.4th 289 (5th Cir. 2021) and 29 C.F.R. § 541.604(b), which is precisely what FMC did in its motion for summary judgment. (*See generally*, ROA.684-87.) In that motion, it claimed that 29 C.F.R. § 541.604(b) (specifically, the reasonable relationship test)—discussed at length by the *Hewitt* court, 15 F.4th at 293-94, whose holding was not addressed by FMC at all—does not apply to the professional exemption. (*See*, ROA.685.) That is wrong, wrong

and wrong again. *See*, U.S. Dep't of Labor, Wage & Hour Div., Op. Letter No. FLSA2018-25 (Nov. 8, 2018) (explaining that reasonable relationship applies where employee is guaranteed a weekly salary but receives additional compensation based on the quantity of work); *see also*, U.S. Dep't of Labor, Wage & Hour Div., Op. Letter No. FLSA2020-13 (Aug. 31, 2020) (discussing professional exemption). In fact, even the judges who strongly disagreed with the majority's decision in *Hewitt* acknowledged that the reasonable relationship applies to the professional exemption under its reasoning. *See*, *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 377 (5th Cir. 2021) (Jones, J., dissenting). The sole support FMC offered for its position was *Chakir v. Ba Research Int'l*, No. H-10-2850, 2011 U.S. Dist. LEXIS 171389 (S.D. Tex. Jul 15, 2011) (Hughes, J.). (*See*, *id*. at 13.) That case predates *Hewitt* by a decade, directly conflicts with its holding and was wrongly decided. It is not precedential and, judging by the fact that no other court has *ever* cited it—either to criticize or compliment its reasoning—has no persuasive value. It is fit for nothing. Accordingly, the Court should reverse.

      ii. FMC's summary-judgment evidence does not establish, as a matter of law, that Hebert's primary duty was work requiring advanced knowledge in a specialized field of science or learning acquired by prolonged study.

To prevail on summary judgment on the professional exemption, FMC needed to establish, as a matter of law, that Hebert's primary duty[8] was work requiring advanced knowledge in a specialized field of science or learning acquired by prolonged study. *See*, 29 C.F.R. § 541.301(a)-(b). This primary duty test has three elements: (1) the employee must actually perform work requiring advanced knowledge; (2) the advanced knowledge must be in a field of science or learning; and (3) the advanced knowledge must be customarily and regularly acquired by a prolonged course of specialized intellectual instruction. *See*, 29 C.F.R. § 541.301(a). An exempt professional must satisfy all three criteria. In this case, however, FMC did not meet its summary-judgment burden as to any of them.

Work requiring advanced knowledge means "work which is *predominantly intellectual* in character[] … as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b) (emphasis added). "An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to *analyze, interpret or make deductions from varying facts or circumstances*." *Id*. (emphasis added). The summary-judgment evidence—especially

---

[8] See *supra* note 7 (discussing primary duty).

when viewed in the light most favorable to Hebert—supports the exact opposite conclusion. It shows that Hebert predominately performed work of the "routine mental, manual, mechanical or physical" and that he seldomly, if ever, used advanced knowledge "to analyze, interpret or make deductions from varying facts or circumstances." *Id*.; *see also*, U.S. Dep't Lab., Wage & Hour Div., Op. Letter (Jul. 11, 1985).

As explained above, Hebert frequently and primarily performed manual labor or other nonexempt work. (ROA.1053 ("We go offshore, we work a ton of hours, we are hands on, and we do it for a hundred days a year. So yes, our primary duty turns into a—very much a technician role."); *see also*, ROA.1053-55 (whether working onshore or offshore, installation engineers do not perform work traditionally required of degreed engineers); ROA.1055-56 (product engineers—not installation engineers—perform work traditionally required of degreed engineers); ROA.1138-39 (installation engineers perform manual labor like pressure testing, equipment inspection and assembly, etc.); ROA.939-40, 943 (FMC corporate representative admitting that installation engineers perform manual work). That is decidedly *not* exempt work.

"The phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where specialized academic training *is a standard prerequisite for entrance into the profession*." 29 C.F.R. §

541.301(d). But Hebert has come forward with evidence that academic training is not required for installation engineers and that several of them in fact do not have degrees. (ROA.1010-13.) Crediting that evidence, as the Court must, there is a genuine issue of material fact as to whether Hebert and the other installation engineers are exempt professionals. *See*, *Dewan*, 858 F.3d at 340 ("Notably, a vast majority of this contrary evidence comes from the plaintiffs' own testimony. To the extent the testimony of a witness who is also a party may be impaired by party self-interest, it is ordinarily the role of the jury—not the court on summary judgment—to discount it accordingly." (citations and quotations omitted)). Accordingly, the Court should reverse.

> iii.  FMC's summary-judgment evidence does not establish, as a matter of law, that Hebert's primary duty was work requiring the consistent exercise of discretion and judgment.

To prevail on summary judgment on the professional exemption, FMC needed to establish, as a matter of law, that Hebert's primary duty[9] was work requiring the *consistent* exercise of discretion and judgment. 29 C.F.R. § 541.301(b) (emphasis added). In this case, there was a complete failure of proof on that issue. In other words, FMC did not show at all—much less as a matter of law—that Hebert consistently exercised discretion and judgment. In fact, its motion for summary

---

[9] See *supra* note 7 (discussing primary duty).

judgment *did not even address* that particular element of the exemption. (*See*, ROA.676-82, 687-90.) Accordingly, the Court should reverse.

CONCLUSION

FMC did not meet its threshold summary-judgment burden to establish its affirmative defense that Hebert is exempt from the maximum hour requirements of the FLSA as a professional employee beyond peradventure, and the district court ignored binding precedent that conclusively forecloses application of all of the white-collar exemptions to Hebert. All of that was error, and this Court should, therefore, reverse.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: s/ Curt Hesse
    Curt Hesse
    Tex. Bar No. 24065414
    curt@mooreandassociates.net

*Counsel for Appellants Brent Hebert &*
*Aaron Mohammed*

CERTIFICATION REGARDING PRIVACY REDACTIONS

As required by 5th Cir. R. 25.2.13 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that all required privacy redactions have been made.


s/ Curt Hesse
Curt Hesse

## CERTIFICATION REGARDING ELECTRONIC SUBMISSION

As required by 5th Cir. R. 25.2.1 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that the electronic submission of this document is an exact copy of the paper document and that it has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

s/ Curt Hesse
_____
Curt Hesse

### CERTIFICATE OF SERVICE

As required by Fed. R. App. P. 25(b) and 5th Cir. R. 25.2.5, I certify that I served a copy of this document on all parties or their counsel of record—who are listed below—in accordance with Fed. R. App. P. 25(c) on the date indicated as follows:

> Ms. Kelsi S. White
> kwhite@azalaw.com
> Mr. Todd W. Mensing
> tmensing@azalaw.com
> AHMAD, ZAVITSANOS & MENSING, P.L.L.C.
> 1221 McKinney Street, Suite 2500
> Houston, Texas 77010
> Facsimile: (713) 655-0062
> *Counsel for Appellees TechnipFMC USA, Inc. & FMC Technologies, Inc.*

      ☐ personal delivery
      ☐ mail
      ☐ third-party commercial carrier
      ☐ electronic means
      ☒ CM/ECF system

| January 19, 2023 | s/ Curt Hesse |
|---|---|
| Date | Curt Hesse |

### CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 28(a)(10), 32(g)(1) and 5th Cir. R. 32.3, I certify that this document complies with the:

1. type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☒ this document contains four thousand three hundred fifty-four (4,354) words, or

   ☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Williams Caslon Text font (12-point Williams Caslon Text font for footnotes in accordance with 5th Cir. R. 32.1), or

   ☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

s/ Curt Hesse
Curt Hesse